## STATE v. NORVAL KAASA.[1]

October 23, 1936.

No. 31,028.

*McDonough & Diehl,* for appellant.

*John L. Connolly, Irving Gotlieb,* and *James F. Sullivan,* for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of violating an ordinance which provides:

"It shall be unlawful for any person, directly or indirectly, upon any pretense or by any device, to keep for sale or have in his possession for the purpose of sale, any intoxicating liquor unless said person has first obtained from the City of St. Paul a license permitting him to sell intoxicating liquor."

Defendant appeals from a judgment adjudging him guilty and sentencing him to a term of imprisonment in the St. Paul workhouse. In his notice of appeal he states "that the appeal is taken from questions of law and fact and more particularly upon the

[1]Reported in 269 N. W. 365.

ground that the court erred in not ordering the evidence suppressed and returned to the defendant and in not dismissing the case upon the conclusion of the trial, and also upon the ground that the state failed to prove facts sufficient to sustain the complaint in said action."

The facts are these: On March 19, 1936, two police officers went to defendant's apartment at 93-95 East Eleventh street in St. Paul, about 3:45 o'clock in the afternoon, having been directed so to do by their superior officer. Upon arrival one of them rapped on the door, and they were admitted by a young woman to whom one of them showed his policeman's star. They asked her where "Slim" was, that being the name by which defendant was generally known. She told them he was in the front room. On their way there they proceeded through the kitchen, where they found some ten cases of beer, two or three cases being on ice in a cooler; also more than a dozen bottles of "hard liquor" of various types; two cases of soft drinks and seltzer water; some two dozen whisky and highball glasses; and two empty gallon cans with the odor of alcohol emanating from them. In the front room where defendant was when the officers arrived were two five- and ten-cent slot machines with money therein. These machines were set on rubber pads on a table. They arrested the defendant and took all of the property mentioned to police headquarters.

Upon the trial of the cause defendant claimed that some of the liquor and other articles taken belonged to one Hanson, who was in Winnipeg and had been gone some two or three weeks. He disclaimed knowledge of how the slot machines came into his room and said they were not his. The premises were rented by defendant in the name of N. Nelson several years ago. In June, 1932, defendant requested that the premises thereafter be kept in the name of J. Hanson as tenant, but defendant paid the rent to the agent having the property in hand.

The issue presented is whether it was proper on the part of the lower court to receive in evidence the liquor and other items taken by the officers. Defendant promptly and before the trial was had moved for suppression of the evidence of the liquor and other items

mentioned and demanded their return, relying upon the so-called federal rule in cases of this type. The trial court overruled defendant's objections and after hearing the evidence found him guilty and sentenced him to a term in the city workhouse. The court immediately before imposing sentence said:

"The officers seemed able to have gained entrance by the use of a star, saying they were police officers. I will confess some doubt, not with respect to the guilt of the defendant, but some doubt as to the propriety of the arrest under these circumstances. However, this evidence points strongly to his guilt of keeping this liquor for sale."

Thereupon sentence was pronounced. There was no proof of actual sale, and the officers had no search warrant.

Defendant testified in his own behalf to the effect that these premises were occupied by him as his home; also, that over a period of some two years next prior to his arrest he had been unemployed most of the time; that he had on several occasions written to his mother and sister, who reside in Canada, for financial assistance. Using his own language: "When I am short I write home. I don't get it regular. Just when I need money then I get it." The real estate agent from whom the premises were rented testified that the rent was $30 per month and it was paid by defendant. Defendant, with respect to the so-called tenant Nelson, stated that his own second name was Nelson. Respecting his present alleged cotenant, J. Hanson, he said that he thought his given name was Nels. How it happened that defendant was so uncertain as to his cotenant's name seems strange. Just how much credence could be placed upon his testimony was clearly for the trial court. Under the facts and circumstances here related, we think the court could find that the accused was in fact operating a speakeasy. The mythical cotenant, the large quantity of beer, and other intoxicating liquor kept by one in defendant's precarious financial situation justify the conclusion reached by the court. There can be no reversal for lack of sufficient evidence.

The main question relied upon for reversal relates to the admission in evidence of the beer, liquor, containers, and other items

of property taken by the police officers. Not much need be said respecting the use of such items in evidence in view of our prior decisions. State v. Stoffels, 89 Minn. 205, 94 N. W. 675; State v. Hoyle, 98 Minn. 254, 107 N. W. 1130; State v. Rogne, 115 Minn. 204, 132 N. W. 5; State v. Hesse, 154 Minn. 89, 191 N. W. 267; City of Mankato v. Grabowenski, 154 Minn. 265, 191 N. W. 603; State v. Pluth, 157 Minn. 145, 195 N. W. 789. The rule is succinctly stated in City of Mankato v. Grabowenski, 154 Minn. 265, 267, 191 N. W. 603, as follows:

"We find it unnecessary to determine whether Ordinance Number 91 is valid, or whether the liquor was lawfully seized, for the law was settled in this state, by the decisions in [citing cases] that liquor or other property, though forcibly seized, and even though unlawfully seized, may be received in evidence. These cases were recently followed, after further consideration of the questions in view of adverse Federal decisions. State v. Hesse, *supra,* p. 89."

This seems to be the rule in most jurisdictions. See annotations 24 A. L. R. 1411, *et seq.*

Defendant's contention that State v. Pluth, 157 Minn. 145, 195 N. W. 789, casts some doubt upon our prior holdings is without merit. The court, instead of limiting the rule announced in the Grabowenski case, quotes it with approval (157 Minn. 155). Judge Taylor in that opinion carefully reviewed prior cases and discussed the federal rule as announced in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. ed. 746, and definitely adhered to our former holdings. We see no sound reason for disturbing the rule so long and so thoroughly established as that to which we have referred.

Judgment affirmed.